UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
BONNIE KRAHAM,

               Plaintiff,

-vs-

JONATHAN LIPPMAN, sued in his          04 Civ. 1684 (SCR)
individual capacity as Chief Administrative
Judge of the State of New York; and           ECF Case
OFFICE OF COURT ADMINISTRATION,

               Defendants.
------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

STEPHEN BERGSTEIN (6810)

THORNTON, BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277

Counsel for plaintiff

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I: THE APPROPRIATE STANDARD OF REVIEW IS
STRICT SCRUTINY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II: THE REGULATION IS NOT NARROWLY TAILORED . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# **TABLE OF AUTHORITIES**

Broadrick v. Oklahoma, 413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fletcher v. Marino, 882 F.2d 605 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Galabya v. New York City Board of Education, 202 F.3d 636 (2d Cir. 2000) . . . . . . . . . . . . . . . 5

Healy v. James, 408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Lyng v. UAW, 485 U.S. 360 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Molinaro v. Conflicts of Interest Board, 1991 U.S. Dist. LEXIS 1913 (E.D.N.Y. 1991) . . . . . . . 3

Republican Party of Connecticut v. Tashjian, 778 F.2d 265 (2d Cir. 1985) . . . . . . . . . . . . . . . . 1

Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States Civil Service Commission v. National Association of Letter Carriers,
        413 U.S. 548 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

**PRELIMINARY STATEMENT**

Plaintiff Bonnie Kraham respectfully submits this memorandum of law in further support of her motion for summary judgment on the constitutionality of Standards and Administrative Policies § 36.2(b)(4)(i).  This brief shall also respond to defendants' cross-motion for summary judgment.

**ARGUMENT**

**POINT I**

**THE APPROPRIATE STANDARD OF REVIEW IS STRICT SCRUTINY**

Defendants urge this Court to apply "rational basis" review rather than strict scrutiny in assessing § 36.2(b)(4)(i).  Lowering the standard of review would trivialize the right to freedom of association.  There is no question that the Regulation shackles political association as county political party leaders cannot realistically work for any law firm that relies on fiduciary appointments.  These law firms cannot receive such appointments even if one lawyer in the office or a member of her family is "the chair or executive director, or their equivalent, of a state or county political party."  This restriction applies even if the firm employs hundreds of attorneys.  Subjecting plaintiff to a reverse "grandfather rule," this far-reaching prohibition stays in force two years after the attorney in question resigns her political party position.

Accordingly, defendant cannot seriously argue that § 36.2(b)(4)(i) minimally impacts associational rights and employment opportunities.  Lyng v. UAW, 485 U.S. 360, 366-67 (1988).  Where, as here, "the government seeks to withhold benefits from individuals because of their membership in a group or association . . . such interference with the right of collective association may be justified only by narrowly drawn regulations that serve compelling state interests."  Republican Party of Connecticut v. Tashjian, 778 F.2d 265, 277-78 (2d Cir. 1985)

(citing Healy v. James, 408 U.S. 169, 180-84 (1972)).

Defendants cite Fletcher v. Marino, 882 F.2d 605 (2d Cir. 1989) in asserting that the Regulation does not sufficiently "burden[] the rights of political parties and their members" but rather "implicate[s] in a limited fashion, a person's right to participate in politics and to serve as an elected official." (Brief at 7). However, restating the test urged here, Fletcher notes that "if the challenged law burdens the rights of political parties and their members, a challenge under the First Amendment is reviewed under a strict scrutiny standard." Id. at 611. After reviewing when the Supreme Court applies strict scrutiny in the regulation of political parties, Fletcher concludes that "laws that implicate, in a limited fashion, a person's rights to participate in politics and to serve as an elected official have survived review under the First Amendment and have not been subjected to strict scrutiny. These laws differ from those that have been declared unconstitutional under strict scrutiny in that they do not control political parties or the party process, but ensure fairness in both elections and in government service." Id. at 612 (emphasis supplied).

Under the Fletcher test, § 36.2(b)(4)(i) is unconstitutional because it imposes a significant, not de minimus, burden on attorneys who double as political party officials. As set forth above, the Regulation not only prevents certain political attorneys from working for law firms that rely on fiduciary appointments, this ban stays in effect for two years after she resigns her political position. The ban is extended to attorneys with politically-involved family members, and "[t]his prohibition shall apply to the members, associates, counsel and employees of any law firms or entities while the official is associated with that firm or entity." As set forth in the Kraham affidavit, § 36.2(b)(4)(i) poses a substantial obstacle to gaining employment as

2

many local firms rely on fiduciary appointments and she is cut off from such employment for two years. Contrary to the First Amendment, § 36.2(b)(4)(i) also controls the internal structure of political parties by chasing away qualified party members from leadership positions.

The law challenged in <u>Fletcher</u> hardly compares with § 36.2(b)(4)(i). <u>Fletcher</u> concerned the "Serrano Law," which "does no more than prohibit certain municipal employees, political party office holders and elected officials from being community school board members." <u>Id.</u> at 613. The Serrano Law also did not restrict county political party officials (<u>id</u>.), precisely the limitation imposed under § 36.2(b)(4)(i).

The lost opportunity to serve on a community school board cannot compare with the loss of gainful employment opportunities created by § 36.2(b)(4)(i). Indeed, the <u>Fletcher</u> plaintiffs appeared to already have full-time positions and sought only the privilege of serving, unpaid, on the school boards. <u>Id.</u> at 609 n.3. Unlike the Serrano Law, which "does not prevent anyone from running for any office" (<u>id</u>. at 613), § 36.2(b)(4)(i) hits political party officials where it hurts most – in the workplace.

Defendants further rely on <u>Molinaro v. Conflicts of Interest Board</u>, 1991 U.S. Dist. LEXIS 1913 (E.D.N.Y. Feb. 8, 1991), which upheld a restriction on "the number of certain top political positions that certain top public officials may possess at one time." <u>Id.</u> at * 7. <u>Molinaro</u> is similarly distinguishable from § 36.2(b)(4)(i) as it only restricts party involvement rather than create foreseeable barriers to employment.

The other cases in defendants' brief are similarly inapposite. In <u>United States Civil Service Commission v. National Association of Letter Carriers</u>, 413 U.S. 548 (1973), the Court rejected a First Amendment challenge to the Hatch Act which precluded Federal employees from

taking part in certain political activity.  <u>Broadrick v. Oklahoma</u>, 413 U.S. 601 (1973), upholds similar restrictions on political activity by State civil servants.  <u>Letter Carriers</u> noted that the Hatch Act identifies the political activity available to Federal employees. <u>See</u>, <u>id.</u> at 567 ("plainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited"); <u>id.</u> at 568 n.15; <u>id.</u> at 575-76 (proscribing specific conduct and making surgical exemptions including the right to conduct advocacy for religious and cultural organizations and nonpartisan political activity).  In contrast to the careful statutes upheld in <u>Letter Carriers</u> and <u>Broadrick</u>, § 36.2(b)(4)(i) contains broad restrictions which truly hamper an attorney's ability to find work.

<u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351 (1997), also does not help defendant.  <u>Timmons</u> affirmed a prohibition against "fusion" candidates appearing on the ballot as candidate for more than one party.  Rather than prevent the New Party's candidates from appearing on the ballot; this de minimus restriction only precluded the Party "from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate." <u>Id.</u> at 362.  <u>See also</u>, <u>id.</u> at 365 ("because the burdens the fusion ban imposes on the Party's associational rights are not severe, the State need not narrowly tailor the means it chooses to promote ballot integrity").  Section 36.2(b)(4)(i) is more far-reaching and restrictive than the fusion prohibition in <u>Timmons</u>.  None of the cases cited by defendants involves laws or regulations as broadly-tailored as § 36.2(b)(4)(i).

Finally, as the legal standard governing whether to apply strict scrutiny is whether the Regulation significantly burdens political activity, defendants miss the point in arguing that plaintiff can express herself politically without serving as a Democratic Party official.  (Brief at

4

12).  While defendants further suggest that the Regulation is not the proximate cause of plaintiff's job losses (brief at 11), since defendants have not filed a Rule 56(f) affidavit requesting discovery to dispute the allegations in plaintiff's affidavit concerning the Regulation's impact, defendants cannot dispute the factual claim that plaintiff has paid dearly for her political involvement.  At a minimum, plaintiff's claim that the Regulation significantly undercut her employment prospects creates a fact issue precluding summary judgment.

## POINT II

### THE REGULATION IS NOT NARROWLY-TAILORED

Defendants maintain that the regulation is narrowly-tailored because plaintiff can work for a law firm that does not rely on fiduciary appointments.  Defendants further argue that plaintiff did not suffer a "significant burden on her right of political association to warrant strict scrutiny."  (Brief at 11).  By definition, the inability to find employment is significant.  For this reason, in other constitutional contexts, courts routinely hold that the loss of employment constitutes an adverse action sufficient to trigger a claim.  See, Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000) (adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation").

Any argument that a plaintiff's inability to find work represents an insignificant burden ignores the realities of the real world.  While political attorneys may easily find employment in New York City, there is no question that the less-populated Hudson Valley offers fewer choices.  Party leaders like plaintiff are shut out of many employment opportunities for

two years even if they resign their political positions.

Defendants further ridicule plaintiff's objection to the prohibition against waivers. (Brief at 19). Waivers would not "open the door again to subjectivity and discretion that would potentially compromise the integrity of the fiduciary appointment process embodied in the new Part 36." (Brief at 19). Surely there exist circumstances where waivers are appropriate, and <u>careful</u> waivers would make the Regulation narrowly-tailored consistent with the First Amendment. While plaintiff recognizes the need to reform the fiduciary process, since the Regulation significantly inhibits protected political association, defendants' rigid refusal to lift the two-year prohibition against any such appointments to law firms that employ political party leaders and their families cannot be squared with the First Amendment.

Defendants further argue that the Regulation is narrowly-tailored because, before the rule went into effect, they gave party officials a window of opportunity to step down from their positions in order to avoid the restrictions. Other than defendant Lippman's affidavit, there is no evidence to support this claim, and the affidavit does not cite to any. There is also no evidence that this safe harbor was widely publicized. In any event, this procedure does not help current party leaders hamstrung by the far-reaching restrictions set forth in § 36.2(b)(4)(i).

Finally, defendants argue that the Regulation is narrowly-tailored "because it applies only to the narrow class of specific individuals who were found to be benefitting from a politically influenced fiduciary appointment process – the high-level political party officials (chairs, executive directors, or their equivalents) and the associates in their law firms." (Brief at 18). This argument ignores the other restrictions created by the Regulation, namely those concerning family members of political attorneys, the prospective two-year prohibition and the

blanket waiver denials.

Indeed, the lengthy reports annexed to the Lippman affidavit provide no support for the two-year restriction or the waiver refusals, and the Report of the Commission on Fiduciary Appointments (Exhibit B to Lippman affidavit) notes that "the Commission found that many fiduciary appointees are fulfilling their obligations with considerable skill and professionalism." Id. at 3. The Report's recommendations do not even suggest a two-year prohibition against fiduciary appointments after the attorney resigns her political involvement. Id. at 37-65. Interestingly, citing the lack of evidence to support such a prohibition, the Report did not recommend precluding all elected officials from receiving fiduciary appointments. Id. at 40. Yet, while the Report details no compelling need for the two-year restriction or a non-waiver policy, § 36.2(c)(4)(i) contains precisely these limitations.

## CONCLUSION

This Court should grant plaintiff's motion for summary judgment on liability and deny defendants' cross motion for the same relief.

Dated:   Chester, New York
         January 7, 2005

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

THORNTON, BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277

Counsel for plaintiff