UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BONNIE KRAHAM,

    Plaintiff,

    -vs-

JONATHAN LIPPMAN, sued in his individual and official capacity as Chief Administrative Judge of the State of New York, and the OFFICE OF COURT ADMINISTRATION,

    Defendants.

04 Civ. 1684 (SCR)

MEMORANDUM DECISION AND ORDER

---

STEPHEN C. ROBINSON, UNITED STATES DISTRICT JUDGE:

Bonnie Kraham ("Plaintiff") brings this action against Jonathan Lippman and the Office of Court Administration ("Defendants") alleging that the amended Part 36 of the Rules of the Chief Judge violates her First Amendment right to political association. Plaintiff seeks to enjoin enforcement of this rule and is asking for damages for lost income resulting from the restriction.

Plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the issue of liability. Defendants cross-moved for summary judgment, claiming the complaint fails to state a claim upon which relief can be granted.

For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

1

I. <u>Background</u>

Plaintiff is a lawyer licensed to practice law in the State of New York. In September 2002, Plaintiff was elected to serve as Co-Chair of the Orange County Democratic committee, a position she held until September 2004.

Defendant Lippman is the Chief Administrative Judge of the State of New York and is charged with enforcing section 36.2(c)(4)(i) of the Rules of the Chief Judge of the State of New York, which prohibits certain political party officials and their law firms from receiving any court appointments. Section 36.2(c)(4)(i) reads:

> No person who is the chair or executive director, or their equivalent, of a state or county political party, or the spouse sibling parent or child of that official, shall be appointed while that official serves in that position and for a period of two years after that official no longer holds that position. This prohibition shall apply to the members, associates, counsel and employees of any law firms or entities while the official is associated with that entity.

Court appointed fiduciaries serve in various capacities. Courts, for example, appoint fiduciaries as guardians for incapacitated persons, as receivers for properties involved in foreclosure proceedings, and as guardians ad litem for children involved in litigation. Fiduciary appointees are usually private attorneys, who are paid for their services from the assets of the litigants.

The appointment of fiduciaries has been the target of extensive public criticism recently. Following allegations regarding the connection between political party service and receipt of fiduciary appointments in Brooklyn Supreme Court, Chief Judge Judith S. Kaye announced a broad program to reform the State's fiduciary appointment process in 2000. She created a Commission on Fiduciary Appointments to examine existing rules and practices and make recommendations for improvement. She also created the Office

2

of the Special Inspector General for Fiduciary Appointments ("Special Inspector General"). The Special Inspector General found that: one county political leader had received nearly 100 appointments, another county leader had received over 75 appointments, and that an attorney whose law firm employs a county political leader had received nearly 100 appointments. In response to these findings, the Commission recommended that political leaders, their immediate relatives, and the partners, legal associates, and other employees of the political party official's law firms be prohibited from receiving judicial appointments. See 22 N.Y.C.R.R. § 36.2(c)(4)(i).

II. Analysis

Plaintiff claims that because of Section 36.2(c)(4)(i), she was unable to find work as a lawyer following her ascent to the Orange County Democratic Committee Co-chairmanship. She alleges, more specifically, that on three separate occasions, she was denied work as a lawyer in Orange County because her hiring would cause the automatic denial of judicial appointments to every colleague in those firms. (Pl. Aff. ¶¶ 5-8.) Plaintiff argues that her inability to find employment is a direct result of section 36.2(c)(4)(i), and thus is a violation of her right of political association.

The freedom to associate with political parties is a fundamental right guaranteed by the First and Fourteenth Amendments to the Constitution. *See Tashjian v. Republican Party*, 479 U.S. 208, 214 (1986). Courts use either a strict scrutiny standard or rational basis standard in considering the validity of a plaintiff's freedom of political association claim. To determine which standard to apply, the Second Circuit has held that courts must first decide "if the challenged law burdens the rights of political parties and their

members." *Fletcher v. Marino*, 882 F.2d 605, 611 (2d Cir. 1989) (quoting *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 222 (1980)). If such a burden is found, the case is reviewed under a strict scrutiny standard. *Fletcher*, 882 F.2d at 611. If not, the case is examined using a rational basis standard. *Id.*

The cases that have used strict scrutiny have typically involved restrictions on candidates' access to the ballot, restrictions on voters' access to the polls, and the internal workings of political parties. *See, e.g., id; Eu*, 489 U.S. at 214; *Tashjian*, 479 U.S. 208 (1986); *Anderson v. Celebrezze*, 460 U.S. 480 (1983). However, laws that "implicate, in a limited fashion, a person's rights to participate in politics . . . have survived review under the First Amendment and have not been subjected to strict scrutiny." *Fletcher*, 882 F.2d at 612. In *Fletcher*, for example, the Second Circuit held that a provision that prohibited certain municipal employees, political party office holders, and elected officials from being school board members was subject to the rational basis standard instead of the strict scrutiny standard. *Id.* at 615.

Here, the prohibition on political party leaders receiving judicial appointments is subject to the rational basis standard rather than the strict scrutiny standard. Plaintiff has had difficulty finding employment in several different law firms because of the regulation. Thus, the regulation does not burden Plaintiff's ability to associate with a political party; rather, it places a limitation on her ability to work for law firms that receive judicial appointments while she holds a leadership position within the party.[1] The field of law is a diverse profession that allows attorneys to seek employment in a vast range of areas. Plaintiff is not restricted from obtaining employment with law firms that do not have members who seek judicial appointments, corporations, educational entities,

---

[1] The limitation continues for a period of two years after Plaintiff ends her term as a party official.

4

or various other types of organizations that have a need for lawyers. The inability to work in certain law-firms, while an incidental limitation on Plaintiff's ability to gain employment, is not a sufficient burden on the right of political association to receive the standard of strict scrutiny. Therefore, a rational basis analysis should be applied in considering whether the rule violates the right of political association.

To apply the rational basis standard, a court must determine whether there is a legitimate state interest in the regulation that can justify the incidental impact on individuals' rights. *Fletcher*, 882 F.2d at 612. New York has a legitimate state interest in protecting the integrity and efficiency of its judicial appointment process. The Commission and the Special Inspector General found that many lucrative appointments were given to officers of political parties and their law firms, raising suspicion that the fiduciary appointment process was politically influenced. (Def. Ex. A). Because elected judges are dependent upon political parties for their nomination, the Commission found that political party leaders exercised "considerable influence over the judicial nomination and selection process." *Id.* This influence compelled the court system to take steps to regulate the appointment process in order to eliminate the influence in the fiduciary appointment process. Section 36.2(c)(4)(i) is such a step. Section 36.2(c)(4)(i) helps further the legitimate goal the state has in eliminating corruption and favoritism in the judicial appointment process. This interest justifies the incidental impact on individuals' rights, including Plaintiff's inability to work for certain law firms. Thus, the state has satisfied the rational basis standard.

III. Conclusion

For the reasons stated above Plaintiff's motion for Summary Judgment is DENIED, and Defendants' cross-motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

White Plains, New York

Dated: _May 17_, 2006

Stephen C. Robinson
United States District Judge